UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CARLTON X. MATHEWS,

    Plaintiff,

v.                                          Case No. 3:23cv10264-LC-HTC

W. WALTERS, et al.,

    Defendants.
_____/

REPORT AND RECOMMENDATION

Before the Court is Defendants' motion to dismiss, Doc. 29, and Plaintiff's response in opposition, Docs. 39.[1] After reviewing the parties' submissions and the relevant law, the undersigned concludes the motion should be granted and this case should be dismissed without prejudice, as Plaintiff failed to exhaust his administrative remedies regarding his failure-to-protect claims.

**I.    Background**

Plaintiff Carlton Mathews, proceeding *pro se*, is an inmate of the Florida Department of Corrections ("FDOC") currently confined at Santa Rosa Correctional Institution ("SRCI"). His second amended complaint[2] names six SRCI employees

---

[1] Plaintiff also filed a supplement to his response, Doc. 40, which only addresses Defendants' punitive damages argument.
[2] The second amended complaint is incorrectly titled as a "third amended complaint." Doc. 12.

as Defendants: (1) Sergeant W. Walters; (2) Sergeant C. Lesser; (3) Sergeant T. Barker; (4) Officer Rodriguez; (5) Officer Gunn; and (6) Officer Sears. Doc. 12 at 1-2. The second amended complaint sets forth the following factual allegations, which are accepted as true for purposes of this Report and Recommendation.

Before June 30, 2022, Plaintiff wrote multiple informal grievances, submitted an inmate request to the classification department, and verbally complained about his cellmate, Ali Perkins, and his problematic behavior. On June 30, 2022, Perkins punched Plaintiff in the face and bit his finger.

On July 6, 2022, Plaintiff asked Officer Sears to move either him or Perkins and relayed that Perkins had attacked him. On July 7, Plaintiff told both Officer Rodriguez and Officer Sears about his issues with Perkins; Rodriguez advised Plaintiff he could not move one of the inmates until after speaking with a captain, while Sears said he could not effect a move until he spoke with a sergeant. On July 8, Plaintiff told Sergeant Barker about Perkins' June 30 attack and asked for a cell transfer; Barker indicated he would speak to the captain. Later that day, Perkins told Barker that either him or Plaintiff needed to be moved. Barker reiterated that he needed to speak with the captain before anyone could be moved. That night, when Plaintiff was being escorted back to his cell from the shower, he repeated his complaints about Perkins to Barker; Barker asked if Plaintiff had written a grievance regarding the issue and stated, "he would look into it."

On July 9, Perkins asked Barker about the status of the cell reassignment. Barker indicated he had spoken to the captain, said something to Perkins regarding what the captain said, and walked away. Later, Plaintiff asked Rodriguez to move him or Perkins to another cell. Rodriguez ignored Plaintiff and walked away.

On the morning of July 10, Perkins attacked Plaintiff and punched him in the face repeatedly, which caused a cut above Plaintiff's left eye. About 40 minutes later, Plaintiff told Sergeant Lesser about the attack by Perkins and showed him the blood on his hands. Lesser "looked at plaintiff and walked away." Plaintiff also told Officer Gunn about the fights between him and Perkins and "it was obvious from all the blood in plaintiff's face that his cellmate had attacked him." Plaintiff asked Gunn to move him or his cellmate, but Gunn simply stated "'I will check on it' and walked away." Plaintiff had a similar interaction with Sergeant Walters at approximately 7:45 a.m. Plaintiff told Walters "this dude is a bug and he need to be moved." Walters replied, "you the bug," argued with Plaintiff, and left.

A few minutes after Walters left, Perkins attacked Plaintiff again. Perkins punched Plaintiff in the face, then took a homemade razor blade and cut him across the face. Plaintiff "cried out for help" and, at approximately 8:10 a.m., Walters, Gunn, and an unidentified officer came to Plaintiff's cell. Walters made some comments indicating he believed Plaintiff just wanted to "check in," but when a

lieutenant arrived, Walters ordered Plaintiff to submit to hand restraints and moved him to another cell.

Based on the foregoing, Plaintiff alleges the Defendants violated the Eighth Amendment by failing to protect him from the attacks by Perkins. As relief, Plaintiff seeks, from each Defendant, $175,000 in compensatory damages and $150,000 in punitive damages.

## II.   Discussion

Defendants have moved to dismiss Plaintiff's claims, arguing, among other things, that Plaintiff failed to exhaust his administrative remedies regarding his failure-to-protect claims.[3] The undersigned agrees.

### A.   Exhaustion

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory precondition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). The

---

[3] Defendants have also moved to dismiss based on Plaintiff's failure to state a claim and qualified immunity. Additionally, Defendants seek to dismiss any claim for punitive damages. Because a determination that Plaintiff has failed to exhaust his claims is dispositive, the undersigned does not address the other arguments.

exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *See Booth*, 532 U.S. at 741 n.6. Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006).

An exhaustion defense under the PLRA is treated as a matter in abatement, which means procedurally the defense is treated like one for lack of jurisdiction, although it is not a jurisdictional matter. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quotation marks and citations omitted). "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id.* "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (citing *Bryant v. Rich*, 530 F.3d 1368, 1373-74 (11th Cir. 2008)).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to

exhaustion." *Id.* (citing *Bryant*, 530 F.3d at 1373-74, 1376). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083. "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. at 1082 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

The grievance procedures promulgated by the FDOC generally require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).

B.   **Plaintiff's Grievances**

Plaintiff filed an informal grievance on June 27, 2022, complaining that his cellmate was "causing problems in the cell" and requesting that officials move him or his cellmate "to ensure [his] safety." Doc. 29-2 at 1. The grievance was denied on June 28, 2022, with the response stating, "ICT denied your Protective Needs request" on June 8 and "your cellmate and you are compatible." *Id.* Plaintiff then filed a formal grievance on July 8, 2022, which stated:

> Just because me and this inmate is compatible don't means official(s) suppose to ignore facts that my life is place in jeopardy (or harm). This inmate attacked me two days after I made this complaint. He almost

> bit my finger completely off. The inmate continuously is causing problems in the cell.
>
> My cellmate is causing problems in the cell. He keep calling me names and other things. I'm not going to mention some of the inappropriate things he do while in the cell.
>
> Relief sought: I'm respectfully requesting officials to move this inmate immediately.

Doc. 29-2 at 2. The response, dated July 11, 2022, indicated Plaintiff was moved on July 10 and "this is no longer an issue"; thus, Plaintiff's formal grievance was approved. Doc. 29-2 at 3.

Plaintiff argues this July 8 formal grievance satisfied the exhaustion requirement because the grievance was approved. Doc. 39 at 9. While the approval of a grievance satisfies the exhaustion requirement, *see Henderson v. Langenbrunner*, 2010 WL 1408371 at *6 (M.D. Fla. Apr. 2, 2010) (finding inmate exhausted his administrative remedies when his grievance was approved), the problem for Plaintiff is that neither his informal nor formal grievance put prison officials on notice of the claims he makes here against the Defendants—that Plaintiff had warned Defendants about the risk posed by Perkins and Defendants ignored him. *See Arias v. Perez*, 758 F. App'x 878, 881 (11th Cir. 2019) ("A prisoner must exhaust each claim that he seeks to present in court.") (citation omitted).

Instead, Plaintiff's grievances advised prison officials that he was worried about his cellmate and asked to be transferred. The grievances did not inform FDOC

officials that Plaintiff believed Defendants had failed to protect him. *See id.* at 881-82 (finding "Arias failed to exhaust his failure-to-protect claim against Hays" because "[t]he claim that Arias suffered an Eighth Amendment violation when Hays failed to protect him is distinct from the claim that he should be transferred to a protective management unit" and "Arias's filings addressed the latter … but not the former"); *id.* at 882 ("None of Arias's grievances pursued a claim against Hays for failing to protect him, as distinct from requesting protection itself.").

The only statements in the July 8 formal grievance that could potentially be seen as referencing Plaintiff's failure-to-protect claim—"just because me and this inmate is compatible don't means official(s) suppose to ignore facts that my life is place in jeopardy (or harm) and "this inmate attacked me two days after I made this complaint"—are not specific enough to put prison authorities on notice that Plaintiff was alleging Defendants failed to protect him. *See Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (noting the purpose of administrative exhaustion "is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues") (quoting *Griffin v. Carlin*, 755 F.2d 1516, 1531 (11th Cir. 1985)) (alterations in original); *see also Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("[T]he grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems

this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem.").

Plaintiff argues he used the term "officials" in the formal grievance in reference to Defendants Barker, Rodriguez, and Sears, Doc. 39 at 9, but the grievance does not describe Plaintiff making any particular complaints about Perkins to any of these officers at any particular time.[4]  The grievance further does not identify the Defendants by appearance, by name, or by any other information. Rather, these statements in the formal grievance are most logically seen as referring to the person who responded to the June 27 informal grievance, considering: (1) Plaintiff's reference to him and Perkins being "compatible" echoed the words used in the informal grievance response; and (2) Perkins' June 30 attack did not occur two days after Plaintiff made a complaint to any of the Defendants.[5]

Furthermore, Plaintiff did not request Defendants, much less any dorm officer, be investigated or disciplined for failing to protect him.  Instead, he simply asked that him and Perkins be separated, which occurred on July 10.  Based on the

---

[4] Even assuming Plaintiff did not know the names of the Defendants at the time he filed the grievance, he did not provide *any* description of his interactions with the Defendants and, thus, prison officials would not have known of the need to investigate a failure-to-protect claim.
[5] In the proposed third amended complaint, discussed in a separate order, Plaintiff alleges he told Sergeant K. Hill about his issues with Perkins on June 30, the same day as Perkins' first attack at SRCI.  Doc. 27-1 at 2-3.  In the second amended complaint, Plaintiff alleges: (1) he warned Defendants Sears, Rodriguez, and Barker about Perkins after the June 30 attack, on July 6, 7, and 8, Doc. 12 at 2-3; and (2) his interactions with Defendants Lesser, Gunn, and Walters occurred on July 10, after he filed the July 8 formal grievance, *id.* at 4-6.

foregoing, the undersigned concludes that, under the second step of the *Turner* analysis, the July 8 formal grievance did not exhaust Plaintiff's failure-to-protect claims against any of the Defendants.

Although Plaintiff does not cite it as proof of exhaustion in his response, the undersigned also considered whether his July 16 formal grievance (and subsequent appeal) exhausted his failure-to-protect claim against Walters and determined it does not. This grievance includes the statement, "Sergeant Walters was retaliating against Mathews because I told him I will be filing [a] lawsuit on him for not moving him knowing that his cellmate had attacked him." Doc. 29-3 at 4. Although the statement indicates Walters failed to move Plaintiff after he was attacked by his cellmate, it does not indicate Walters was aware of any risk before the attack, or that Walters' failure to move Plaintiff after the attack led to Plaintiff suffering further attacks or injury. Thus, the statement is too vague to exhaust a failure-to-protect claim against Walters.

Moreover, considering the entirety of the grievance, it is clear the issue being grieved is a disciplinary report ("DR") Walters wrote Plaintiff for allegedly spitting on him, not Walters' failure to protect from Plaintiff from Perkins. *See* Fla. Admin. Code r. 33-103.006(2)(f) (stating "each grievance must address only one issue or complaint"). First, the grievance opens by stating "the appellant Carlton Mathews, hereby appeal his disciplinary report (DR)." Doc. 29-3 at 3. Second, the grievance

identifies four grounds for challenging the DR: (1) a mental health professional failed to approve the DR; (2) Plaintiff was not allowed to call witnesses at the DR hearing; (3) Plaintiff was denied the right to attend the DR hearing; and (4) Plaintiff was innocent of the charged infraction, which Walters fabricated. *Id.* at 3-5. And lastly, the grievance requested that the DR be dismissed. *Id.* at 5.

Thus, while the grievance made a passing reference to Walter's potential motivation for writing Plaintiff the DR, it was clearly not about Walters' failure to protect Plaintiff from Perkins. Because none of Plaintiff's grievances were sufficient to alert prison authorities to the circumstances surrounding his failure-to-protect claims, he failed to exhaust his administrative remedies and the claims should be dismissed without prejudice.[6]

Accordingly, it is RECOMMENDED:

1. That Defendants' motion to dismiss, Doc. 29, be GRANTED, and this case be DISMISSED WITHOUT PREJUDICE due to Plaintiff's failure to exhaust his administrative remedies.

2. That the clerk be directed to close the file.

---

[6] Only five of the six Defendants named in the second amended complaint have been served and moved for dismissal. Nevertheless, because Plaintiff failed to exhaust his failure-to-protect claims against all of the Defendants, the claim against the unserved Defendant, Officer Rodriguez, should also be dismissed. *See Escobar v. Crosby*, 363 F. Supp. 2d 1361, 1366 (S.D. Fla. 2005) (noting dismissal of prisoner's claims against unserved defendants was appropriate based on both the prisoner's failure to effect timely service under Federal Rule of Civil Procedure 4(m) and his failure to exhaust administrative remedies).

Case No. 3:23cv10264-LC-HTC

At Pensacola, Florida, this 4ˢᵗ day of December, 2023.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.